11 P.3d 153

2000-NMCA-086

Linda MACIAS, Plaintiff–Appellant,

v.

James JARAMILLO and Joe C. Jaramillo, Jr., Personal Representatives of the Estate of Joe C. Jaramillo, Deceased, and State Farm Mutual Automobile Insurance Company, and John Doe (unknown Personal Representative of the Estate of Joe C. Jaramillo, Deceased), Defendants–Appellees.

No. 20,510.

Court of Appeals of New Mexico.

Aug. 15, 2000.

Lynn Barnhill, Nancy Garner & Associates, P.C. Albuquerque, NM for Appellant.

Terri L. Sauer, Miller, Stratvert & Torgerson, P.A. Albuquerque, NM for Appellees.

*OPINION*

SUTIN, Judge.

{1}   The issue in this appeal is whether a plaintiff who files an action seeking recovery against an estate loses her cause of action if she has not joined a duly appointed personal representative of the dead person's estate before the statute of limitations has run.

{2}   Plaintiff Linda Macias filed a complaint on May 14, 1998, against James Jaramillo and Joe C. Jaramillo, Jr. (the Jaramillos), as personal representatives of the estate of Joe C. Jaramillo, deceased (Decedent), as a result of injuries Plaintiff received when she was struck on June 7, 1995, by an automobile driven by Decedent.   Decedent was the father of the Jaramillos.   Plaintiff sued the Jaramillos based on a statement of James Jaramillo that the Jaramillos were the personal representatives of Decedent's estate.   At the time the complaint was filed, and by the time the statute of limitations had run, neither the Jaramillos nor anyone else had, in fact, been appointed personal representative of Decedent's estate.

{3}   Plaintiff filed an amended complaint after the statute of limitations had run, naming Decedent's insurer and "John Doe" as the unknown personal representative of Decedent's estate as defendants.   Because the Jaramillos had not been duly appointed as personal representatives of Decedent's estate before the statute of limitations had run against Plaintiff's claim, the district court ruled that the complaint was a nullity and that the amended complaint would not relate back.   Consequently, the court dismissed Plaintiff's claim with prejudice.   We determine that Plaintiff's claim is viable and reverse.

**FACTS AND PROCEEDINGS**

{4}   Soon after the June 7, 1995, accident, Plaintiff's first attorney began correspondence with Decedent's insurer, State Farm, that continued into October 1996.   After a year's hiatus in correspondence, Plaintiff's first attorney informed State Farm in October 1997 that he was no longer representing Plaintiff.   In January 1998, Plaintiff's second attorney began correspondence with State Farm that continued into March 1998.

{5} Decedent died in July 1997. Plaintiff first learned of Decedent's death sometime around April or May 1998, very near the June 7, 1998, statute of limitations deadline. On May 13, 1998, Plaintiff's lawyer spoke on the telephone with James Jaramillo. James told the lawyer that he and his brother Joe were the personal representatives of Decedent's estate. Upon receiving this information, on May 14, 1998, Plaintiff filed her complaint naming as defendants the Jaramillos as personal representatives of their father's estate. On May 15, 1998, Plaintiff's lawyer sent State Farm a copy of Plaintiff's complaint with a letter that stated: "With your permission, I spoke with James Jaramillo about who was the personal representative of his father's estate and he replied it was him and his brother." James was himself a State Farm insurance agent.

{6} The Jaramillos were served on May 29, 1998. They did not file an answer. Rather, on February 23, 1999, some nine months after the complaint was filed, and after the three-year statute of limitations deadline in NMSA 1978, § 37-1-8 (1976) had passed on June 7, 1998, they filed their motion to dismiss. Apparently, settlement discussions, including discussions regarding possible mediation, took place in the interim.

{7} The Jaramillos based their February 23 motion to dismiss the complaint on the grounds that they were not the personal representatives of Decedent's estate, the complaint did not name a true legal entity and no controversy existed giving the court subject matter jurisdiction, and the claim was barred by the statute of limitations. This caused Plaintiff to file a first amended complaint on February 25, 1999, unilaterally dropping the Jaramillos from the caption and adding State Farm and "John Doe (unknown Personal Representative of the Estate of Joe C. Jaramillo, Deceased)" as defendants.

{8} The lawyers who represented the Jaramillos also represented State Farm in defense of the amended complaint. They asked the court to dismiss the first amended complaint on the grounds that the original complaint was a nullity because Decedent was dead and no personal representative had yet been appointed, and that the amended complaint's naming of "John Doe" was similarly defective. Plaintiff filed a proceeding in the district court of Doña Ana County (No. D-307-PB-9900055) on March 25, 1999, in order to obtain appointment of a personal representative of Decedent's estate.

{9} The district court held that Plaintiff's claim was barred by the statute of limitations and her amended complaint did not relate back under Rule 1-015(C) NMRA 2000. Based on those determinations, the court granted the Jaramillos' motion to dismiss and entered a "Final Order" on May 5, 1999, dismissing the action and all claims with prejudice. However, the dismissal was "not without a considerable degree of consternation on the Court's part."

{10} On appeal, Plaintiff contends that (1) the Jaramillos lacked standing to bring a motion to dismiss the first amended complaint, (2) John Doe had the capacity to be sued, (3) the first amended complaint relates back to the original complaint, (4) equitable estoppel precludes a statute of limitations defense, and (5) public policy favors the right of action over the right of limitation.

## DISCUSSION

{11} The district court felt constrained by our decision in *Mercer v. Morgan*, 86 N.M. 711, 526 P.2d 1304 (Ct.App.1974), in which we held that a complaint filed against a dead person was a nullity and that an amendment to add the personal representative after the statute of limitations had run would not relate back under Rule 1-015(C).

{12} We are convinced that the *Mercer* rule should not apply in this case, and that under the circumstances of this case Rule 1-015(C) is applicable, and the only question is whether Rule 1-015(C) conditions have been met to allow relation back. We first look at whether the complaint was a nullity. We next discuss Rule 1-015(C).

### A. The Complaint Was Not a Nullity

{13} Our "nullity" jurisprudence appears to have begun with *Mercer* in 1974. This Court cited a 1949 annotation in *American Law Reports* and several cases from other jurisdictions in saying "[w]e follow the general rule that a suit brought against a defen-

dant who is already deceased is a nullity and of no legal effect." *Mercer*, 86 N.M. at 712, 526 P.2d at 1305. This Court then ruled that an amendment adding a duly appointed personal representative after the running of the statute of limitations did not relate back under Rule 15(c), because there was no pending action to which it could relate. *See id.* at 712–13, 526 P.2d at 1305–06.

{14} More recently, our Supreme Court in *Chavez v. Regents of the University of New Mexico*, 103 N.M. 606, 611–12, 711 P.2d 883, 888–89 (1985), held that an amendment to add the personal representative as a party plaintiff after the statute of limitations had run related back to the filing of the original complaint under Rule 1–015(C). The statute of limitations had run before the personal representative was appointed. *See Chavez*, 103 N.M. at 610, 711 P.2d at 887. The Court in *Chavez* distinguished *Mercer*, saying that it "is not the situation in the present case," *Chavez*, 103 N.M. at 610, 711 P.2d at 887. The facts in *Chavez* differ from those in *Mercer* and the present case in that *Chavez* involved a plaintiff who failed to first secure the appointment of a personal representative to commence a wrongful death action. However, the circumstances in *Chavez* are close enough for us to draw on the policy statements that support the *Chavez* decision. The Supreme Court stated:

> New Mexico follows the principle that in the interests of justice and to promote the adjudication of a case upon its merits, amendments should be freely granted and allowed to relate back to the date a complaint was originally filed so as to avoid the bar of the statute of limitations whenever the requirements of Rule 15(c) are met. Where the real parties in interest received sufficient notice of the proceedings or were involved unofficially at an early stage, the statute of limitations should not be used mechanically to bar an otherwise valid claim.

*Id.* at 610, 711 P.2d at 887 (citations omitted). The Court specifically determined that the complaint was "[not] a nullity ab initio requiring dismissal and the institution of a new suit after the plaintiff qualifies as a personal representative," *id.*, and overruled this Court's decision in *Mackey v. Burke*, 102 N.M. 294, 694 P.2d 1359 (Ct.App.1984). *Mackey* held that "[s]ince the original complaint is a nullity, plaintiffs' arguments on application of Rule 15(c) are irrelevant. It is a nullity for the reason that the natural parents lacked capacity to sue." *Id.* at 299, 694 P.2d at 1364. *Mackey* was an action by the decedent's parents, in which the father was not made personal representative until after the statute of limitations had run. See *id.* *Mackey* was overruled despite the existence of a statute stating that an action for wrongful death " '*shall* be brought *by and in the name* or names *of the personal representative* or representatives of such deceased person.'" *Id.* at 296, 694 P.2d at 1361 (quoting NMSA 1978, § 41–2–3 (1953)).

{15} Here, Plaintiff was injured by an insured tortfeasor who then died. Decedent was certainly no longer in existence—thus creating the idea of "nullity"—but Decedent's insurance remained in existence. *See* NMSA 1978, § 45–3–803(D)(2) (1993). His estate also still existed and was subject to liability merely upon the filing of appropriate documents under the Probate Code. *See* NMSA 1978, § 45–3–301 (1978) and § 45–3–401 (1975). Thus, the only real issue is whether the policy against stale lawsuits should bar this action. We think not.

{16} Under the crunch of an approaching statute of limitations bar, the circumstances in this case indicate both diligence and an honest attempt on Plaintiff's part to pursue the right procedural course, rather than staleness or disregard of the procedural rules. We see no reason to determine the complaint a "nullity" where Plaintiff named the sons of a tortfeasor decedent after one of them stated that they were the personal representatives, in order to get an action on file within the limitations period. Plaintiff here was clearly laboring under a mistake, having been misled by James Jaramillo. *Cf. Marino v. Gotham Chalkboard Mfg. Corp.*, 259 F.Supp. 953, 954 (S.D.N.Y. 1966) (mem.) ("[A] party which knows that it is the intended defendant can neither take steps which lead the plaintiff down the garden path, nor can it sit back and knowingly take advantage of plaintiff's mistake.").

{17} When a plaintiff who has learned of the death of a tortfeasor faces an imminent limitations bar, we see little reason to forbid the plaintiff the ability to get his or her claim on file by naming "John Doe" as the personal representative of the tortfeasor's estate and then proceeding diligently pursuant to the Probate Code procedure to obtain the appointment of a personal representative. We think that the naming of the Jaramillos in the original complaint was little different than naming "John Does" in their capacities as personal representatives, with the knowledge and expectation that a formal legal entity, the personal representative of Decedent's estate, would shortly and lawfully come into existence to act for Decedent's estate and to answer for the tortious actions of Decedent. *Cf. Valdez v. Ballenger*, 91 N.M. 785, 786–87, 581 P.2d 1280, 1281–82 (1978) (holding that an amendment substituting appointed personal representative for John Doe as personal representative related back to original complaint). We therefore hold that Plaintiff's original complaint was not a nullity.

### B. NMSA 1978, § 45–3–104 (1975) Does Not Bar the Action

{18} Even with her complaint no longer considered a nullity, Plaintiff's claim must overcome the hurdle of the Probate Code section that disallows commencement of a "proceeding to enforce a claim against the estate of a decedent ... before the appointment of a personal representative." Section 45–3–104(A). The obvious purpose of this provision is to prevent the adjudication of claims against the assets of decedents before a personal representative is appointed to defend a decedent's estate. We do not find this section inconsistent with the notion that, in order to escape the bar of the statute of limitations, a plaintiff may bring an action before the appointment of a personal representative by naming the prospective personal representative as "John Doe" and then diligently pursuing the appointment of the personal representative. We therefore do not think that Section 45–3–104 is an obstacle to the mere filing of Plaintiff's complaint.

### C. The Amendment Relates Back

{19} Rule 1–015(C) was written to provide a safe harbor from the application of statutes of limitation.

Statutes of limitations are meant to provide parties with formal and seasonable notice that a claim is being asserted against them. Rule 15(c) is based on the idea that a party who is notified of litigation concerning a given transaction or occurrence is entitled to no more protection from statutes of limitations than one who is informed of the precise legal description of the rights sought to be enforced. If the original pleading gives fair notice of the general fact situation out of which the claim arises, the defendant will not be deprived of any protection afforded by the state statute of limitations. The opportunity to take advantage of plaintiff's pleading mistakes is not one of those protections.

3 James Wm. Moore, *Moore's Federal Practice* ¶ 15.15[2], p. 15–145 (2d ed.1996) (footnotes omitted). The rule is in furtherance of "[t]he general philosophy of the pleading rules ... that they should give fair notice, should be liberally construed, be subject to liberal amendment, and that decisions should be on the merits and not on technical niceties of pleading." *Id.* at 15–146.

{20} "The rationale of Rule 1–015 is to preclude use of the statute of limitations 'mechanically to prevent adjudication of a claim where the real parties in interest were sufficiently alerted to the proceedings or were involved in them unofficially from an early stage.'" *Rivera v. King*, 108 N.M. 5, 10, 765 P.2d 1187, 1192 (Ct.App.1988) (quoting *Galion v. Conmaco Int'l, Inc.*, 99 N.M. 403, 406, 658 P.2d 1130, 1133 (1983)) (internal quotation marks omitted).

{21} Rule 1–015(C) reads:

C. **Relation back of amendments.** Whenever the claim or defense asserted in the amended pleading arose out of the conduct, transaction or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading. An amendment changing the party against whom a claim is asserted relates back if

the foregoing provision is satisfied and, within the period provided by law for commencing the action against him, the party to be brought in by amendment:

(1) has received such notice of the institution of the action that he will not be prejudiced in maintaining his defense on the merits; and

(2) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against him.

{22} "The purpose of the statute of limitations is to prevent stale claims. This purpose is not compromised by allowing relation back when the requirements of Rule 1–015 are met." *Rivera*, 108 N.M. at 10, 765 P.2d at 1192 (citation omitted).

{23} Our analysis is equally grounded in the salutary mandate in Rule 1–015(A), "leave [to amend] shall be freely given when justice so requires," because a court's discretion to deny a motion to amend a complaint is limited by this mandate. *See Jacobsen v. Osborne*, 133 F.3d 315, 318 (5th Cir.1998); *see also Rivera*, 108 N.M. at 9, 765 P.2d at 1191 ("Motions to amend are addressed to the sound discretion of the trial court, and will be reversed on appeal only for abuse of discretion."). "The purpose of this rule [Rule 15(a) ] is to provide parties the opportunity to amend a claim that was filed when significant facts remained unknown so that the controversy will be decided on the merits of the case." *O'Brien v. City of Grand Rapids*, 783 F.Supp. 1034, 1036 (W.D.Mich.1992). *Jacobsen* sets out what a court may consider in determining whether to permit an amendment:

In sum, the motion should not be denied "unless there is a substantial reason to do so". Toward that end, the district court may consider factors such as whether there has been "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party, and futility of amendment".

*Jacobsen*, 133 F.3d at 318 (citations and emphasis omitted).

{24} At the outset, for clarity, we summarize the critical limitations' deadlines and dates. The statute of limitations asserted in this case as a bar to Plaintiff's claim is Section 37–1–8, the three-year statute relating to personal injury claims. The Probate Code limitation on the presentation of claims against a decedent's estate, *see* § 45–3–803, was apparently not raised below, presumably because of the manner in which the issues were presented to and addressed by the district court. Under Section 45–3–803(A)(1), a tort claim against a decedent's estate that arose before the death of the decedent is barred against the estate or the personal representative "unless presented within . . . one year after the decedent's death." In the present case, Plaintiff filed her claim in time to satisfy either statute of limitations. The action was filed on May 14, 1998. The three-year deadline under Section 37–1–8 was June 7, 1998. The one-year deadline under Section 45–3–803 was a specific date in July 1998.

{25} The threshold question whether an amended complaint can furnish the real person or name of a fictitious or John Doe defendant in the original complaint is answered by whether the three conditions of Rule 1–015(C) are met. *See Watson v. Unipress, Inc.*, 733 F.2d 1386, 1389 (10th Cir. 1984). Only the two specifically numbered conditions, namely (C)(1) and (C)(2), are pertinent here, because the occurrence asserted in the amended complaint is the same as that asserted in the original complaint. The issues before us, then, are whether before July 1998 the party to be added received sufficient notice so that "he will not be prejudiced in maintaining his defense on the merits," and "knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against him." Rule 1–015(C)(1), (2).

{26} In the present case, Decedent's assets and insurance continued to exist after his death. The assets and insurance existed at the time of the original complaint, at the time the statute of limitations ran, and at the time the amended complaint was filed. While it is true that at none of these points had a personal representative of Decedent's

estate been appointed, we see no reason to require the "existence" of a duly appointed personal representative under the circumstances of this case.

{27}   Many months of correspondence occurred between Plaintiff's lawyers and State Farm. Upon learning of decedent's passing, Plaintiff's attorney communicated with State Farm, and State Farm gave the attorney permission to speak to Decedent's son James. Plaintiff's attorney spoke directly to James, who told Plaintiff's attorney that he and his brother were the personal representatives of their father's estate. Plaintiff then immediately named Decedent's sons in that capacity. After learning that James had apparently been mistaken, Plaintiff filed an amended complaint naming State Farm and "John Doe (unknown Personal Representative of the Estate of Joe C. Jaramillo, Deceased)" as party defendants. Plaintiff then sought appointment of a personal representative. Under the Probate Code, Plaintiff, as a creditor of the estate, could seek appointment of herself as personal representative. *See* NMSA 1978, § 45–3–203(F)(3) (1975).

{28}   It is apparent from his conversation with Plaintiff's attorney that James knew why Plaintiff wanted to know the name of the personal representative. Except for the fact that James was a State Farm agent and presumably knew of his father's death, the record is silent on whether State Farm was actually aware that Decedent died well before Plaintiff filed her action. State Farm was unquestionably aware that Plaintiff asserted a claim against Decedent almost immediately after the accident, and State Farm knew that the complaint was filed. State Farm retained counsel to defend the Jaramillos and used the same lawyers to defend itself against the amended complaint.

{29}   Those with real and close interests in Decedent's assets and liability insurance, the Jaramillos, had actual notice before June 7, 1998, of Plaintiff's claim and lawsuit, and they and their mutual lawyers knew that all that stopped the claim and lawsuit from proceeding was the appointment of a personal representative of Decedent's estate. It was not a surprise to anyone that Plaintiff's claim was aimed at Decedent's estate, and that it would take only a few documents filed in court to legally effectuate an estate and obtain appointment of a personal representative in order to enforce the claim in question. We see no prejudice to Decedent's estate.

{30}   Application of the phrase in Rule 1–015(C)(2) "but for a mistake concerning the identity of the proper party," does not in our opinion change the result here. The Jaramillos knew or should have known that the naming of the Jaramillos was a mistake, also that the naming of the Jaramillos was little different than naming the party defendant as "John Doe, as personal representative of the decedent's estate." While the Jaramillos may have been advised by their legal counsel that they could raise the defense that the complaint was a nullity, they were unquestionably on notice that Decedent's estate and insurance was the target and that the Jaramillos or a creditor could be appointed as personal representative. "[T]he 'mistake' condition 'is not limited to cases of misnamed or misdescribed parties, rather the Rule is widely understood to allow the addition of new parties that were never originally named or described.' " *Sendobry v. Michael,* 160 F.R.D. 471, 474 (M.D.Pa.1995) (mem.) (quoting *Heinly v. Queen,* 146 F.R.D. 102, 107 (E.D.Pa.1993)). In addition, "[a] party who participated in conduct described in a complaint should reasonably expect to be named regardless of whether the caption refers to that party as 'John Doe' or as an 'unnamed defendant.' " *Id.* at 473. Thus, "[t]he mistake aspect of Rule 15 is 'designed to insure that, prior to the expiration of the limitation period, the new defendant knew (or should have known) that his joinder was a distinct possibility.' " *Id.* at 474 (quoting *Taliferro v. Costello,* 467 F.Supp. 33, 36 (E.D.Pa.1979)).

{31}   Our reading of Rule 1–015(C) does not lay any waste to the policy against staleness. This procedure is "in the interests of justice and to promote the adjudication of a case upon its merits." *Chavez,* 103 N.M. at 610, 711 P.2d at 887; *see also Gaston v. Hartzell,* 89 N.M. 217, 220, 549 P.2d 632, 635 (Ct.App.1976) ("[T]he law favors the right of action rather than the right of limitation . . . [and][f]ault of defendant and injustice to plaintiff are other reasons to favor action.");

*Sanchez v. Candelaria,* 5 N.M. 400, 407, 23 P. 239, 241 (1890) (holding that the purpose of statute permitting amendments to pleadings is "to promote the attainment of substantial justice between the parties. Technical objections are to be disregarded, and the case tried upon its merits.").

{32} Additionally, the designation of the particular capacity of "John Doe" (or, here, the Jaramillos) as the personal representative of the estate of the tortfeasor provides the clarity required in Rule 1–010(A) NMRA 2000, and it reasonably forecasts the plaintiff's intent to proceed to seek "[a]n amendment changing the party against whom a claim is asserted" under Rule 1–015(C). Also, the designation of capacity as personal representative serves to forecast a plaintiff's need to join an indispensable or necessary party to the action under Rule 1–019 NMRA 2000. Because of the Section 45–3–104 requirement that the claim cannot be enforced absent the appointment of a personal representative, the addition of the personal representative actually amounts to the joinder of a party required for a just adjudication of the merits of a plaintiff's claim.

{33} Below, Plaintiff did not argue Rule 1–019 as a basis for a later amendment adding a duly appointed personal representative, and we therefore will not determine whether Rule 1–019 can serve as a basis in this case to permit such an amendment. We note, however, that we have permitted amendment after a statutory *jurisdictional* deadline (as opposed to a statute of limitations deadline) has passed to add an indispensable or necessary party, absent a showing of prejudice. *See State ex rel. Sweet v. Village of Jemez Springs, Inc. City Council,* 114 N.M. 297, 301–02, 837 P.2d 1380, 1384–85 (Ct.App. 1992). In *Sweet,* we permitted the addition of a necessary or indispensable party to an appeal after the time for filing the notice of appeal had expired. *See id.* Although the appeal was from the decision of a local land use authority to a district court, we made specific note of a Supreme Court's rule then in existence, the predecessor to Rule 12–301 NMRA 2000, that permitted "an appellate court to add parties 'on such terms as it may deem proper' at any stage of any proceeding." *Sweet,* 114 N.M. at 301, 837 P.2d at 1384. Rule 12–301 now actually permits appeals to proceed against a dead person's estate *without a personal representative having been appointed. See* Rule 12–301.

## CONCLUSION

{34} We apply the rationale and policy in *Chavez* to allow amendment of Plaintiff's complaint to add or substitute a duly appointed personal representative as a party defendant in place of the Jaramillos in the original complaint.

{35} We remand to the district court to grant leave to Plaintiff to proceed expeditiously to obtain appointment of a personal representative of Decedent's estate and to amend her complaint to add or substitute a duly appointed personal representative of Decedent's estate. We deny Plaintiff's motions to sanction the Jaramillos for failing to file a timely answer brief and to strike that answer brief.

{36} **IT IS SO ORDERED.**

BUSTAMANTE and ARMIJO, JJ., concur.